**The below described is SIGNED.**



Dated: September 30, 2011



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>C.W. Mining Company<br>dba Co-Op Mining Company,<br><br>        Debtor. | Bankruptcy Number: 08-20105<br><br>Chapter 7<br><br>Judge R. Kimball Mosier |
| Kenneth A. Rushton, Chapter 7 Trustee,<br><br>        Plaintiff,<br>v.<br><br>Bank of Utah,<br><br>        Defendant. | Adversary Proceeding No. 10-2712 |
| Bank of Utah,<br><br>        Third-Party Plaintiff,<br><br>v.<br><br>Hiawatha Coal Company, Inc.<br>and P.P.M.C., Inc.,<br><br>        Third-Party Defendants. | |

**MEMORANDUM DECISION**

This matter is before the Court on the cross-motions for summary judgment filed by Kenneth A. Rushton, the plaintiff and chapter 7 trustee (Trustee) and the defendant, Bank of Utah (Bank).  In this adversary proceeding, the Trustee seeks to recover $383,099 in postpetition payments to the Bank.  At the time the Bank received the payments, it was a fully secured creditor and the payments to the Bank caused no damage to the estate.  Although the Trustee characterizes his claims as a recovery of unauthorized postpetition transfers or turnover of property of the bankruptcy estate transferred to the Bank in violation of the automatic stay, he seeks recovery of the $383,099 free and clear of any secured claim of the Bank.  In substance and effect, the Trustee seeks to "strip" the Bank's lien from the collateral that secured the Bank's debt at the time of the transfer.

## I.  JURISDICTION

The Trustee commenced this adversary proceeding pursuant to 11 U.S.C. §§ 362, 542, 549, and 550.[1]  This is a case arising under title 11 of the United States Code.  The parties in this case aver, and this Court finds, that "core" matter jurisdiction rests in this Court under 28 U.S.C. §§ 157(b) and 1334.

## II. UNDISPUTED FACTS

C.W. Mining operated a coal mine.  In order to finance the acquisition of equipment necessary to conduct its mine operations, C.W. Mining entered into three loan agreements with

---

[1] Unless otherwise noted, all statutory references herein are to title 11 of the United States Code.

Bank of Utah.  C.W. Mining executed promissory notes (Note(s)) for each loan agreement and each Note had an interest rate in excess of 4.31%.  Each Note was secured by various pieces of equipment and included a cross-collateralization provision such that all of the assets securing any one of the Notes secured all of the Notes, and the Bank's security interest was properly perfected.

On August 10, 2007, C.W. Mining and the Bank entered into a letter of credit transaction to enable C.W. Mining to obtain an irrevocable standby letter of credit (Letter of Credit) to the Utah Department of Natural Resources Division of Oil, Gas and Mining, and the Office of Surface Mining (DOGM).  C.W. Mining caused $362,000 to be deposited with the Bank and the Bank issued a certificate of deposit (CD) in favor of C.W. Mining in the amount of $362,000 with a maturity date of August 10, 2008 and an interest rate of 4.31%.  C.W. Mining also executed a promissory note in favor of the Bank in the amount of $362,000 with an interest rate of 6.75% (Letter of Credit Note).  C.W. Mining's obligations under the Letter of Credit Note were secured by an assignment of the CD and included a cross-collateralization provision similar to the prior Notes such that all of the assets securing the Letter of Credit Note secured all of the Notes.  The Bank then issued the Letter of Credit to DOGM.

On January 8, 2008, creditors filed an involuntary bankruptcy petition under chapter 11 of the United States Bankruptcy Code against C.W. Mining and on September 26, 2008, the Court entered an order granting relief in C.W. Mining's involuntary bankruptcy proceeding.  On November 13, 2008, C.W. Mining's Chapter 11 bankruptcy proceeding was converted to one under chapter 7 and the Trustee was appointed.

3

Case 10-02712 Doc 54 Filed 09/30/11 Entered 09/30/11 14:23:46 Desc Main
Document Page 4 of 28

The Bank did not renew the Letter of Credit and on February 19, 2009 effected a transaction (Transaction) involving the CD. The Bank liquidated the CD which had a value of $383,099 and then applied $79,487 to one of the Notes and $303,612 to one of the other Notes. The Bank's application of the CD proceeds to these two Notes is hereinafter referred to as the "$383,099 Transfer." The Bank was aware of the C.W. Mining bankruptcy proceeding when it liquidated the CD and applied the proceeds to the Notes.

Not long after the CD was liquidated, the Bank entered into a loan purchase agreement with P.P.M.C., Inc. (PPMC) whereby the Bank assigned all of its interests, in the loans and loan documents between the Bank and the Debtor, to PPMC. The Trustee has now paid PPMC the full principal and interest owing on the claims PPMC purchased from the Bank.

On September 14, 2010, the Trustee commenced this adversary proceeding seeking judgment in the amount of $383,099 under two theories: (1) avoidance of the $383,099 Transfer under § 549 and recovery of $383,099 under § 550(a)(1); and (2) for an order declaring the liquidation of the CD and the $383,099 Transfer void as a violation of the automatic stay under § 362(a) and an order for turnover of $383,099 under § 542.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law.[2] As the parties do not dispute the facts as stated above (at least for purposes of this motion and cross-motion), and the issue before the Court is one of legal analysis and application, summary judgment is appropriate.

---

[2] Fed. R. Civ. P. 56(c)(2).

4

Whether the Bank willfully violated the § 362(a) automatic stay is disputed. However, this factual dispute is not material to this Court's decision. For purposes of this decision, the Court views the facts most favorably for the Trustee[3] and assumes there was a willful violation of the automatic stay.

## IV. ANALYSIS

The Trustee's complaint asserts two claims for relief. The Trustee's first claim seeks to avoid the $383,099 Transfer under § 549 and recover $383,099 pursuant to § 550. The second claim avers that the liquidation of the CD is void because it violated § 362(a) and "therefore, the CD has always remained an asset of the bankruptcy estate and, pursuant to § 542, the Trustee is entitled to delivery of $383,099."[4] Under both claims for relief, without alleging any damages,[5] the Trustee attempts to recover a $383,099 payment, free and clear of the Bank's lien. Such an outcome would effectively "strip" the Bank's lien from its collateral and deprive the Bank of the amount it was legally entitled to at the time of the $383,099 Transfer, simply because the Bank received a postpetition transfer in violation of the automatic stay. The result does not return the parties to the status quo, is unrelated to any damages, is clearly punitive in nature, and creates a windfall for the bankruptcy estate.

---

[3] *See Carney v. City of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).

[4] *See* Compl. ¶¶ 29 and 30, ECF No. 1; Tr. Combined Reply Mem. Supp. of Tr. Mot. Summ. J. & Mem. Opp'n to Mot. Summ. J. 37, ECF No. 34.

[5] The Trustee does seek interest of "approximately 3% per year" on his second claim for relief but the Trustee does not characterize the interest he seeks as damages. The Court also notes that the principal amount of the Notes that was paid accrued interest at a higher rate than the CD.

A.    **The Trustee's § 549 Claim.**

In analyzing the Trustee's § 549 claim, it is critical to recognize that the transfer the

Trustee seeks to avoid was a payment to a fully secured creditor in exchange for satisfaction of a

portion of a lien.  This fact, which the Trustee fails to recognize or ignores, is important when

analyzing the consequences of avoiding a transfer to a fully secured creditor.  The Trustee does

not seek to avoid the Transaction in its entirety.  The Trustee seeks to selectively avoid only one

side of the Transaction, the payment of $383,099, without avoiding the other side of the

Transaction, the satisfaction of the Bank's lien.


1.    **A Transfer To A Fully Secured Creditor May Not be Avoided Under § 549 Without Reviving The Secured Creditor's Lien.**

Section 549 endows the Trustee with the power to avoid certain postpetition transfers.

To "avoid" means "to make void [or] annul."[6]  Courts have consistently held that if a trustee

avoids a transfer to a secured creditor under § 549, the parties are returned to the status quo that

existed prior to the transfer and the secured creditor's lien is automatically revived.  A number of

cases have simply dismissed § 549 actions because the secured creditor's lien is revived and

avoidance is pointless.[7]  Other cases have limited § 549 avoidance to the amount of equity the

_____

[6] The Scribner-Bantam English Dictionary 66 (rev. 1980).

[7] *See, e.g.*, *Dave Noake Inc. v. Harold's Garage, Inc. (In re Dave Noake, Inc.)*, 45 B.R. 555, 557 (Bankr. D. Vt. 1984) ("Further, to restore Harold's to its pre-transaction position would require that Harold's be restored to the position of a perfected secured creditor holding a presently enforceable lien."); *EEE Commercial Corp. v. Holmes (In re ASI Reactivation, Inc.)*, 934 F.2d 1315, 1321 (4th Cir.1991) (affirming bankruptcy court's approval of settlement of § 549 action because "the benefit to the estate of such avoidance has not been demonstrated"); *Lowe v. Sheinfeld, Maley & Kay, P.C. (In re Saunders)*, 155 B.R. 405, 414–15 (Bankr. W.D. Tex. 1993) ("If [the transferee] were compelled to turn over these monies to the Trustee, the Trustee would merely return the exact same sum of money back to [the transferee] upon

debtor had in the property transferred.[8]  One court, rather gratuitously, avoided a postpetition

transfer to a secured creditor but noted that the avoidance would be of little value since the

avoided transfer would be subject to the secured creditor's lien.[9]  The one court that did not treat

the secured creditor's lien as automatically revived upon avoidance, nonetheless relied on

§ 502(h) to revive the secured creditor's lien.[10]

The Trustee cites *Research-Planning, Inc. v. Segal (In re First Capital Mortgage Loan*

*Corp.)*[11] as authority for his argument that he may recover property under § 549 without reviving

secured claims.  *Research-Planning* involved preference actions brought under § 547 and held

that funds the debtor had paid out of trust prior to bankruptcy did not regain their trust status

when the bankruptcy trustee recovered them.  *Research-Planning* is distinguishable for at least

four reasons: (1) it involved § 547 actions, not a § 549 action; (2) the trustee recovered a

_____

distribution of the estate."); *Weiss v. People Sav. Bank (In re Three Partners, Inc.)*, 199 B.R.
230, 237 (Bankr. D. Mass. 1995) (holding that the trustee was not allowed to recover payments
from prepetition collateral because the creditor enjoyed a secured position on the collateral and
there was no reason to compel turnover.); *Adams v. Hartconn Assocs., Inc. (In re Adams)*, 212
B.R. 703, 714 (Bankr. D. Mass 1997) ("[N]othing would be achieved by recovering payment to a
secured creditor who in any event is entitled to the payment ahead of other creditors.").

[8] *See McCord v. Agard (In re Bean)*, 252 F.3d 113, 116 (2d Cir. 2001) (holding that
§ 550 limited the trustee's recovery to the equity he had already recovered that his § 549 claim
was correctly dismissed); *Schnittjer v. Burke Constr. Co. (In re Drahn)*, 405 B.R. 470, 476–77
(Bankr. N.D. Iowa 2009) (finding that $9,912.10 of a $10,762.10 payment to a secured creditor
was subject to the creditor's secured claim and awarding judgment for $850.00).

[9] *See Mund v. Heritage Bank, N.A. (In re Willmar Nursing Home)*, Adv. No. 4-91-14,
Case No. 4-89-2921, 1991 WL 172017, *5 (Bankr. D. Minn. Aug. 21, 1991).

[10] *See Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)* 375 F.3d 51, 70 (1st Cir.
2004) (" [W]e . . . conclude that Fleet's 502(h) claim would have the status of a prepetition
secured claim, entitling it to full recovery of the gap proceeds were we to undertake the exercise
of avoiding the gap payments.").

[11] 917 F.2d 424 (10th Cir. 1990).

payment to an unsecured creditor, not a payment to a fully secured creditor; (3) the party asserting the claim to the recovered funds was not the party from whom the funds were recovered; and (4) the interest in the recovered funds being asserted was a trust interest, not a lien interest.

These distinguishing facts make *Research-Planning* inapposite to this case.  Under § 547, a transfer is not a preference, and may not be recovered by a trustee, if it does not enable the transferee to receive more than it would receive in a case under chapter 7.[12]  Since a fully secured creditor's claim would be paid in full in a case under chapter 7, payment of a fully secured creditor's claim is not a preference and thus not recoverable by the trustee.[13]  Because a trustee cannot recover payments to fully secured creditors, the issue of whether a secured creditor's lien attaches to a § 547 recovery from a fully secured creditor never arises.  The other cases cited by the Trustee, *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*[14] and *In re Overland Park Merchandise Mart Partnership, L.P.*,[15] which hold that liens do not attach to recoveries under § 547, likewise have no application to the facts of this case.

---

[12] Section 547(b) states:
> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
> . . .
>> (5) that enables such creditor to receive more than such creditor would receive if-
>>> (A) the case were a case under chapter 7 of this title;
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the extent provided by the provision of this title.

[13] *Adams*, 212 B.R. at 713.

[14] 314 F.3d 1190 (10th Cir. 2002).

[15] 167 B.R. 647 (Bankr. D. Kan. 1994).

A similar analysis applies to adversary proceedings brought pursuant to § 548.  Under § 548, a transfer is not constructively fraudulent if the debtor receives reasonably equivalent value in exchange for the transfer.[16]  If a fully secured creditor releases its lien in exchange for payment, the fully secured creditor gives value in exchange for the payment and the transfer is not fraudulent.[17]

The Trustee's attempt to recover the $383,099 Transfer free and clear of the Bank's lien is clearly inconsistent with the intent of the Bankruptcy Code.  The fact that §§ 547 and 548 do not permit a trustee to avoid payments to fully secured creditors is significant.  In addition to §§ 547 and 548, the Bankruptcy Code is replete with provisions that protect properly perfected secured claims.[18]  It is clear that Congress intended that properly perfected secured claims be protected under the Bankruptcy Code.  Consistent with this intent, the Supreme Court has affirmed that a fully secured creditor's lien may not be stripped from its collateral and valid liens pass through bankruptcy unaffected.[19]

---

[16]  Section 548(a)(1)(B)(i) states:
> The trustee may avoid any transfer . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or obligation . . . .

[17] *See, e.g.*, *Sorenson v. Tire Holdings Ltd. P'ship (In re Vinzant)*, 108 B.R. 752, 759 (Bankr. D. Kan. 1989).

[18] *See* §§ 361, 362, 363, 364, 506(b), 506(d), 522(f), 546(b), 547, 548, 554(b) and 1111.

[19] *E.g.*, *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992); *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991); *Farrey v. Sanderfoot*, 500 U.S. 291, 297–99 (1991).

The Trustee's reliance on *Marathon Petroleum Co., LLC v. Cohen (In re Delco Oil, Inc.)*[20] is also misplaced.  Although *Delco Oil* involved avoidance of a § 549 transfer, the trustee was not seeking recovery of a transfer to a fully secured creditor.  In *Delco Oil,* the trustee sought to recover postpetition payments made to a supplier using cash collateral in violation of § 363(c)(2).  The payments were made without court approval or the agreement of the secured creditor and were therefore unauthorized postpetition payments recoverable by the trustee. *Delco Oil* did not address the secured creditor's lien on the payments recovered by the trustee.[21] And while this Court agrees that § 549 does not "provide a harmless error exception"[22] to a technically correct claim, avoidance under § 549(a) does not necessarily result in recovery under § 550(a).

## 2.    <u>Section 550(a) Renders The Trustee's § 549 Claim Meaningless.</u>

"Section 550 of the Code prescribes the measure of the trustee's recovery" for avoidable transfers.[23]  "The purpose of § 550(a) is to 'restore the estate to the financial condition it would have enjoyed if the transfer had not occurred' and the focus 'is not on what the transferee gained by the transaction but rather on what the bankruptcy estate lost as a result of the transfer.'"[24]

---

[20] 599 F.3d 1255 (11th Cir. 2010).

[21] Although not expressly stated it appears that the secured creditor's claim had been satisfied.

[22] *Id.* at 1262.

[23] *Bean*, 252 F.3d at 116.

[24] *Rushton v. Drive Fin. Servs. (In re Gardner)*, Adv. No. 05-2605, Case No. 05-27551, 2007 WL 2915847 at *3 (quoting *Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Resources, Inc.)*, 354 F.3d 1246, 1266–67 (10th Cir. 2004)).

To the extent a transfer is avoided, § 550 allows the trustee to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."  It is within the court's discretion to order either recovery of the property transferred or its value.[25]  In the case of *Bean* the court, citing *United States v. Rauer,*[26] held that the value of the property a trustee is entitled to recover under § 550(a) is the equity in the property transferred.[27]  In *United States v. Rauer*, the Tenth Circuit stated that "[a]ny portion of a debtor's property that is unencumbered by mortgage—the equity—is part of the bankrupt's estate."[28]  Although the court's statement in *Rauer* may not technically coincide with the definition of "property of the estate" under § 541, which encompasses property subject to liens,[29] the pronouncement is clearly consistent with other sections of the bankruptcy code—specifically §§ 725 and 726.[30]  Section 725 provides that before final distribution of  "property of the estate" the trustee shall dispose of "property in which an entity other than the estate has an interest, **such as a lien** . . . ."[31]  Section 726, which directs the distribution of "property of the estate," makes no provision for distributions to secured creditors.  These sections clearly distinguish "property in which an entity other than the estate has an interest" (property which is subject to a lien) from "property of the

---

[25] *Rodriguez v. Drive Fin. Servs. L.P. (In re Trout)*, 609 F.3d 1106, 1113 (10th Cir. 2010).

[26] 963 F.2d 1332 (10th Cir. 1992).

[27]*Bean* at 117.

[28] *Rauer*, 963 F.2d at 1337.

[29] *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983).

[30] Sections 542(a) and 554 refer to property that is of "inconsequential value" to the estate.  Property that is fully encumbered has no value to the estate.

[31]  § 725 (emphasis added).

11

estate" (property which is not subject to liens).  This Court concludes that property that is

unencumbered by a mortgage—the equity—is the "value" the Trustee may recover for the

benefit of the estate under § 550.

Because the Bank reduced its lien in an amount equal to the payment it received, there

was no equity transferred to the Bank and the bankruptcy estate lost no value as a result of the

transfer.   In this case, to equate the $383,099 Transfer to the "value" the Trustee may recover

for the benefit of the estate would not restore the estate to the financial condition it would have

enjoyed if the transfer had not occurred but would result in a windfall for the estate and is clearly

inconsistent with § 550.[32]  Section 549 may permit the Trustee to avoid the $383,099 Transfer,

but §§ 550 does not permit the Trustee to recover the $383,099 Transfer free and clear of the

Bank's lien.

The Trustee's approach in this case is similar to the trustee's approach in *Bean* and

demonstrates a "penological theory" of the Bankruptcy Code, which must be rejected.  Although

the Trustee's complaint states a technically correct claim under § 549, avoidance of the $383,099

Transfer would bring $383,099 back into the estate subject to the Bank's security interest,

resulting in zero net benefit to the estate.  Because the Bank would be entitled to receive exactly

what it would be forced to return through avoidance, granting judgment to the Trustee in this

adversary proceeding under § 549 would be meaningless.

---

[32] *See Weinman*, 354 F.3d at 1266 ("Section 550(a) is intended to restore the estate to the
financial condition it would have enjoyed if the transfer had not occurred.").

**B.    The Trustee's § 362(a) Claim.**

The automatic stay is "one of the fundamental debtor protections provided by the

bankruptcy laws"[33] and also provides creditor protection by staying actions against property of

the estate.  Although the automatic stay should be held inviolable, it should not be the basis for

expanding the jurisdiction of the bankruptcy court or creating new remedies that are not

consistent with the Bankruptcy Code or non-bankruptcy law.  In this case, the Trustee asks this

Court to liberally apply its powers under § 105 and create a unique remedy, essentially a "lien

strip," for a violation of the automatic stay.  This Court concludes that the remedy the Trustee

requests pursuant to § 362(a) is unsupportable and contrary to law.

As stated in his complaint, the Trustee's theory of recovery under § 362(a) is that the

Bank be "deemed to still be in possession of the CD" and the Trustee is entitled to "an order of

turnover, under § 542, requiring Bank of Utah to deliver to the Trustee the money represented by

the CD."  Although the Trustee's theory of recovery is apparently not based on this Court's

exercise of its civil contempt powers but only a determination that the liquidation of the CD was

void, a discussion of bankruptcy court civil contempt powers and the limitations of powers under

§ 362(a) and § 105(a) is relevant to a determination of the Trustee's claim under § 362(a).


**1.    The Court's Power To Fashion Remedies For Violation Of Automatic Stay Is
Circumscribed By The Bankruptcy Code.**

Section 362 is a prohibitory statute, not a remedial statute.  Although § 362(k) provides a

limited remedy for "an individual injured by any willful violation of the stay" to "recover actual

---

[33] *Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986) (citing
legislative history).

13

damages," the Bankruptcy Code provides no specific remedy for non-individual debtors or trustees for violations of the automatic stay under § 362(a).  Using civil contempt powers under § 105, courts have awarded damages to persons, other than individuals, for injuries arising from violations of the § 362(a) stay.  The Tenth Circuit has expressly recognized that bankruptcy courts may exercise civil contempt powers to enforce the § 362(a) stay.[34]  "While bankruptcy courts do not have inherent civil contempt power, we conclude that Congress has granted them civil contempt power by statute.  The statutory authority derives from 11 U.S.C. § 105 and 28 U.S.C. § 157."[35]

Exercise of a bankruptcy court's civil contempt power, including § 362(a) stay violations, must be consistent with the purpose of civil contempt orders and is subject to limitations of the Court's § 105 powers.  "Civil contempt orders serve either or both of two purposes: (1) to compel or coerce obedience of a court order; and (2) to compensate parties for losses resulting from the contemptor's [sic] non-compliance with a court order."[36]  Any sanction for civil contempt, including violations of § 362(a), that this Court imposes must serve one or both of these purposes.

The imposition of civil contempt sanctions must be appropriate under the circumstances and may not be punitive.[37]  "[A] contempt sanction is considered civil if it is remedial, and for

---

[34] *See Mtn. Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 (10th Cir. 1990).

[35] *Id.* (acknowledging *Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd.),* 827 F.2d 1281, 1284 (9th Cir. 1987)).

[36] *Id*. at 447 n.2 (quoting *Gibbons v. Haddad (In re Haddad)*, 68 B.R. 944, 952 (Bankr. D. Mass. 1987) (correction in original)).

[37] *See id*. at 447–48.

14

the benefit of the complainant.  But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court."[38]  Civil contempt sanctions are coercive and the contemnor must be able to purge the contempt by committing an affirmative act to comply with the court order.[39]  "Criminal contempt is a crime in the ordinary sense and  criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings."[40]

Additionally, the bankruptcy court's civil contempt powers which derive from § 105 must, and only can, be exercised within the confines of the Bankruptcy Code.[41]  A bankruptcy court's exercise of its authority under § 105(a) may not contravene or disregard the plain language of a statute.[42]  "[T]o allow the bankruptcy court, through principles of equity, to grant any more or less than what the clear language of [a statute] mandates would be tantamount to judicial legislation and is something that should be left to Congress, not the courts."[43]

The bankruptcy court may not substitute civil contempt sanctions as an award of damages for causes of action that are otherwise recognized in law.   The Tenth Circuit "has repeatedly

---

[38] *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 (1994) (internal quote omitted).

[39] *See id.* at 829.

[40] *Id. at 826* (internal quote and citations omitted).

[41] *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).

[42] *Scrivner v. Mashburn (In re Scrivner)*, 535 F.3d 1258, 1265 (10th Cir. 2008) ("Section 105(a) does not empower courts to create remedies and rights in derogation of the Bankruptcy Code and Rules.").

[43] *Id.* at 1263 (quoting *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1207 (10th Cir. 2005)).

applied the general rule that equitable relief is available only in the absence of adequate remedies at law."[44]  A bankruptcy court's § 105 powers may not be used to create substantive rights and "cannot be exercised contrary to or in excess of the terms of the substantive Code provision being enforced."[45]

The foregoing discussion of this Court's § 105(a) powers and civil contempt powers is relevant, not because the Trustee is asking that the Court exercise its civil contempt powers, but rather, in order to put the Trustee's claim under § 362(a) in context.  If the Trustee were asking this Court to exercise its civil contempt power, it would not be appropriate for this Court to "strip" the Bank of its secured claim for a violation of the automatic stay that caused no injury to the estate.  It would be more inappropriate for this Court to effectively "strip" the Bank's lien based on the Trustee's poorly articulated claim that because a transfer is "void" under § 362(a), this Court can simply order turnover of an asset that no longer exists.

**2.      The Trustee Misconstrues The Effect Of Declaring Acts In Violation Of The Automatic Stay Void.**

The Trustee's claim is premised on his argument that "[b]ecause the liquidation of the CD was void, the CD has always remained an asset of this bankruptcy estate.  This action, asking for the delivery of the funds in the CD account, is not an action to recover damages."[46]   The Trustee does not explain how a determination that an act is "void" allows the Court and parties

---

[44] *Switzer v. Coan*, 261 F.3d 985, 991 (10th Cir. 2001).

[45] *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1307 (10th Cir. 2008).

[46] Tr. Combined Reply Mem. Supp. of Tr. Mot. Summ. J. & Mem. Opp'n to Mot. Summ. J. 37, ECF No. 34.

16

to ignore events that have transpired.  The Trustee's position is unsupportable for a number of

reasons.  First, the argument is inconsistent and illogical on its face.  The Trustee acknowledges

that the CD was liquidated yet argues that it remains.  The Trustee also argues that the

liquidation of the CD did not occur, but the Bank's lien has been extinguished.  Finally, the

Trustee seeks what he characterizes as the "delivery" of $383,099 from an account that does not

exist when in fact he seeks recovery of a transfer.

The fallacy in the Trustee's argument results from his misconstruction of the term "void"

in the legal context.  The Trustee argues that any act in violation of the stay is void and therefore

does not occur.  This is not the meaning of "void."  To be void is to be invalid, of no legal force

or effect or incapable of being enforced by law.  As the Tenth Circuit has explained, "void" does

not mean never occurring—it means the law does not recognize the act.

> While it is frequently asserted that an illegal bargain is void, meaning
> thereby, presumably, that the situation is just as if no contract had
> been made, this is not strictly so.  What the courts really have done,
> in such cases, in the absence of a statute specifying otherwise, is to
> take the view merely that the judicial machinery is not available for
> use to one who has participated in an illegal transaction.[47]

Although the Trustee cites legal authority for the proposition that acts in violation of the

stay are void, he cites no legal authority for his proposition that acts in violation of the automatic

stay do not occur.  The lack of legal authority is not surprising since it takes little imagination to

see the absurdity of the argument—a debtor's cow is transferred in violation of the automatic

stay and is eaten.  Many cases holding that actions taken in violation of the automatic stay are

---

[47] *Sender v. Simon*, 84 F.3d 1299, 1308–09 (10th Cir. 1996) (citation omitted).

void appropriately address judicial or administrative proceedings.[48]  These cases clearly illustrate the meaning of void in the legal context.  They do not stand for the proposition that orders or judgments were never entered, but rather orders or judgments entered in violation of the stay have no legal effect.  Other cases have held that transfers in violation of the automatic stay are void and ordered the return of the transferred property to compel compliance with § 362(a).[49]  While those cases clearly stand for the principle that the law does not recognize transfers made in violation of the automatic stay, they do not suggest that a liquidation of property in violation of the automatic stay does not occur or that the liquidated property is somehow restored.

The Trustee also misconstrues the effect of declaring an act void.  Declaring an act void means that the law does not recognize the act, but it does not, in and of itself, effect a reversal of the act or result in a recovery of an asset.[50]  The drafters of the Bankruptcy Code recognized that avoiding a transfer does not result in an affirmative recovery.  Certain transfers may be avoided, thus rendered void, under §§ 547, 548, and 549, however, the provisions of § 550 are necessary to enable the trustee to recover transfers that are successfully avoided.[51]

---

[48]  *See, e.g.*, *Goldston v. United States (In re Goldston)*, 104 F.3d 1198 (10th Cir. 1997); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020 (10th Cir. 1994); *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371 (10th Cir. 1990).

[49]  *See, e.g.*, *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1175 (10th Cir. 2007) (ordering creditor to return truck which was repossessed postpetition).

[50]  *See Gold v. United States (In re Laines)*, 352 B.R. 416, 419 n.2 (Bankr. E.D. Va. 2006).

[51]  *See* § 541(a)(3) (makes no reference to property recoverable under §§ 547, 548 or 549, but includes interests recoverable under § 550 as property of the estate).

18

The fact that declaring an act in violation of the automatic stay void does not eliminate the transaction or return the asset is illustrated in the case of *Kalb v. Feuerstein*.[52]  In *Kalb*, after the debtors had filed a petition under the Bankruptcy Act, the Walworth County Court of Wisconsin proceeded with foreclosure and eviction of the debtors from their farm.  The United States Supreme Court held that after the petition was filed in the bankruptcy court the state courts in Wisconsin were deprived of jurisdiction and "the foreclosure, the confirmation of the sale, the execution of the sheriff's deed, the writ of assistance, and the ejection of appellants from their property—to the extent based upon the court's actions—were all without authority of law."[53]  The Supreme Court's holding that the state court's actions were void did not reverse the events that had transpired or result in an affirmative recovery.  The United States Supreme Court reversed the state court judgments and remanded the cases to the Supreme Court of Wisconsin for further proceedings not inconsistent with the *Kalb* decision.

Perhaps most problematic for the Trustee is the necessary result of his own interpretation of "void" or "voidness."  If, as the Trustee asserts, the liquidation of the CD was void and the CD has always remained an asset of this bankruptcy estate, then the Bank's lien on the CD has always remained.  There is no legal or logical basis for the Trustee to argue that the act of liquidating the CD is void but the satisfaction of the Bank's lien on the CD is not void.  The Bank's lien on the CD was removed because the CD was liquidated, and the proceeds were applied to the debt.  If, as the Trustee argues, the CD has always remained an asset of the bankruptcy estate, there are no proceeds to apply to the Bank's debt, and the Bank's lien has not

---

[52] 308 U.S. 433 (1940).

[53] *Id.* at 443.

19

been satisfied.   Because of the contortions and fictions this Court would have to entertain to grant the Trustee's sought-for relief, it is clear to this Court that the remedy the Trustee seeks under § 362(a) is in derogation of the Bankruptcy Code and beyond this Court's powers.

**3.      The Trustee's Argument That § 362(a) May Be Used To Recover Transfers Is Inconsistent With His Theory Of "Void" or "Voidness".**

The Trustee "takes issue with the premise that § 549 provides the sole remedy for recovery of transfers which were both 'unauthorized' and the result of willful violations of the automatic stay."[54]   Initially, this Court notes that the Trustee's argument is inconsistent with his assertion that the CD has always remained an asset of the estate and he is simply seeking a turnover of the asset.   The Trustee argues that some courts have invoked § 362(a) in lieu of § 549 to avoid postpetition transfers.   The Court is unpersuaded by this argument[55] but it is not necessary to address the argument.   The argument does not stand for the Trustee's proposition that transfers in violation of § 362(a) are void and do not occur; it stands for the proposition that transfers in violation of § 362(a) that have occurred may be avoided.

---

[54] Tr. Combined Reply Mem. Supp. of Tr. Mot. Summ. J. & Mem. Opp'n to Mot. Summ. J. 40, ECF No. 34.

[55] Section 549 provides a specific remedy for unauthorized postpetition transfers. Section 105(a) does not allow this Court to create a remedy when the Bankruptcy Code contains a specific remedy for the same conduct.  *See Scrivner*, 535 F.3d at 1265.  Because the specific provisions of § 549 provide a remedy for unauthorized postpetition transfers, it is not necessary for courts to create a remedy to carry out the provisions of the Bankruptcy Code or to prevent an abuse of process.  *Switzer*, 261 F.3d at 991 ("[E]quitable relief is available only in the absence of adequate remedies at law.").

20

The Trustee also asserts that "[t]he Tenth Circuit, in this very case, has held that a Court may order return of property, even by motion, when a stay violation is at issue."[56]  As discussed above, a court may order return of property to compel compliance with § 362 but such an order is distinguishable from an order granting recovery of the value of property that has been transferred.  Further, in this Court's opinion, the Trustee misconstrues the holding in *Standard Indus., Inc. v. Aquila, Inc.*  The basis for the appeal in *Standard Indus., Inc. v. Aquila, Inc.* was this Court's "order ('contempt order') holding Standard and COP in civil contempt for violations of the automatic stay and voiding all actions taken by Standard and COP in violation thereof."[57]  In addressing Standard and COP's argument that this Court exceeded its authority because a bankruptcy court can award only monetary damages when issuing an order of civil contempt, the Tenth Circuit stated:

> Because *Skinner* did not limit the power of a bankruptcy court to awarding just monetary damages in civil contempt orders, **we hold that the bankruptcy court did not exceed its authority by voiding** the actions taken by Standard and COP in violation of the automatic stay.[58]

The Tenth Circuit explained that the contempt order merely voided the violations of the automatic stay and did not award equitable relief or make a determination of property interests.

> Under Rule 7001, proceedings to recovery money or property; to determine the validity, priority, or extent of a lien or other interest in property; to obtain an injunction or other equitable relief; or to obtain a declaratory judgment relating to any of the foregoing are adversary proceedings. . . .

---

[56] *See Standard Indus., Inc. v. Aquila, Inc.(In re C.W. Mining Co.)*, 625 F.3d 1240, 1246 (10th Cir. 2010).

[57] *Id.* at 1243.

[58] *Id.* at 1246 (emphasis added).

> Standard and COP argue that Aquila was required to seek relief under
> Rule 7001 because the contempt order granted injunctive and
> equitable relief, made a determination of property interests, and
> awarded declaratory relief. We do not read the order so broadly, **nor
> would a reasonable person**. The bankruptcy court merely voided
> the violations of the automatic stay and awarded attorneys' fees for
> the cost of pursuing the contempt motion. The relief returned the
> parties to the status quo before Standard and COP violated the
> automatic stay. It did not, as Standard and COP contend, award
> injunctive relief, equitable, or declaratory relief or make any
> determination of property interests.[59]

It is clear that the Tenth Circuit did not view the contempt order as a determination of a property

interest or a judgment to recover property—no reasonable person would. *Standard Indus., Inc.*

*v. Aquila, Inc*. does not stand for the proposition that declaring an act void results in a recovery

of the value of property transferred.

The Trustee's reliance on *Standard Indus., Inc. v. Aquila, Inc.* is also misplaced because

the central issue in *Standard Indus., Inc. v. Aquila, Inc.* was the bankruptcy court's civil

contempt power. As discussed above, it may be appropriate for a bankruptcy court to invoke its

civil contempt powers and order the contemnor to return property of the estate in its possession,

but in the present case, the Trustee does not ask this Court to invoke its civil contempt powers.

**4.      Section 362(a) Does Not Permit This Court To Strip The Bank's Lien.**

"Any violation of the automatic stay is of great concern to the Court," but any violation

of the automatic stay must be "assessed within the facts of [the] particular case."[60]   It is

undisputed that the Bank was fully secured and entitled to interest on its secured debt on the date

---

[59] *Id*. at 1246–47 (emphasis added).

[60] *Gordon v. Taylor (In re Taylor)*, 430 B.R. 305, 316 (Bankr. N.D. Ga. 2010).

of the $383,099 Transfer.  The interest accruing on the secured debt exceeded the interest that

would be earned on the CD, and the payment benefitted the estate by reducing the principal on

the Notes.  The Trustee has not alleged that the estate suffered any injury from the liquidation of

the CD or that the maintenance of the CD was necessary for any business purpose.  The Trustee

has affirmatively stated that he is not seeking damages or a recovery of a transfer.  The Trustee is

asking that this Court declare, by judicial fiat, that the liquidation of the CD and the resulting

$383,099 Transfer never occurred but that the Bank's lien was extinguished.  A plaintiff must be

able to articulate a cause of action upon which relief may be granted.  A conclusory statement of

a right to relief is insufficient.  Given the facts as alleged by the Trustee, the relief the Trustee

seeks under § 362(a) is not only unsupportable and exceeds any authority this Court has under

§ 362(a) or § 105, but would clearly result in a punitive result that is disproportionate to any

actual damages.  To grant the Trustee's requested relief and strip the Bank of its secured status,

all pursuant to § 362(a) and § 105, is antithetic to the Bankruptcy Code and impermissibly goes

beyond the remedies provided under the Bankruptcy Code and Rules.[61]  The Court finds that the

Trustee has failed to state a cause of action under § 362(a) upon which relief may be granted,

and the Trustee's cause of action under § 362(a) must be dismissed.


**C.    The Trustee's § 542(a) Claim.**

In his complaint the Trustee has plead his claim under § 542(a) in conjunction with his

claim under § 362(a).  Claims under § 362(a) and § 542(a) may be related but are not necessarily

---

[61] *See Norwest Bank*, 485 U.S. at 206 ("[W]hatever equitable powers remain in the
bankruptcy courts must and can only be exercised within the confines of the Bankruptcy
Code."); *see also Scrivner*, 535 F.3d at 1265.

dependent on each other so the Court will separately address the Trustee's claim under § 542(a).

Section 542(a) requires an entity (other than a custodian) holding any property of the debtor that

the trustee may use under § 363 to turn that property over to the trustee.  Courts are divided on

the issue of whether a party must be in current possession of the debtor's property to be subject

to § 542(a).  Some courts have held that an entity must have current possession of the property at

the time the trustee makes demand for turnover.[62]  Other courts have held that because an entity

must turnover to the trustee "such property or the value of such property" the requirement for

turnover under § 542(a) applies if the entity held estate property at any time during the pendency

of the bankruptcy case.[63]  For purposes of this decision this Court assumes that current

possession of the estate property is not a prerequisite for § 542(a) to be applicable.

1.      **The Bank Is Not Subject To Turnover Under § 542(a) Because The CD Was Of Inconsequential Value Or Benefit To The Estate.**

The requirement that an entity turnover property to the trustee is excused if the property

is of inconsequential value or benefit to the estate.[64]  Sections 362(d)(2) and 542(a) both allow

relief to a creditor if the estate has no equity in the property.[65]  Section 554(b) also provides that

---

[62] *See, e.g.*, *Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 429 (8th Cir. 2007) (holding that an entity must have possession of the property at the time turnover is demanded to be liable under § 542(a)).

[63] *See, e.g.*, *Beaman v. Vandeventer Black, LLP (In re Shearin)*, 224 F.3d 353, 356 (4th Cir. 2000) (holding that the trustee need only show possession, custody or control at some point during the case).

[64] *Unified People's Fed. Credit Union v. Yates (In re Yates)*, 332 B.R. 1, 5 (10th Cir. B.A.P. 2005).

[65] *Id.*

24

the court may order the trustee to abandon property, and thus provide relief to a creditor, if property of the estate is of inconsequential value and benefit to the estate.

There was no equity in the CD when it was liquidated and it therefore had no value to the estate.  The case had been converted to a case under chapter 7 and there would be no benefit to the estate if the Trustee attempted to liquidate and administer the CD. Because the Trustee would have had to pay the Bank an amount equal to the CD, the only purpose for administering the CD would be to increase the Trustee's commission.  This is exactly what 554(b) was intended to avoid.  Because the CD had no value or benefit to the estate, the Bank was not required to turnover the CD to the Trustee and is not required to turnover the value of the CD.

**2.      The Requirement That The Bank's Secured Interest In The CD Be Adequately Protected Renders The Trustee's § 542(a) Claim Moot.**

The requirement that a party in possession, custody or control of property that a trustee may use under § 363 is not without limitations.  "As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens.  In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings.  The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession."[66]

---

[66] *Whiting Pools, Inc*., 462 U.S. at  206 (internal citations omitted).

25

At the time the CD was liquidated and the $383,099 Transfer occurred, the Bank was a fully secured creditor. If this Court were to order the Bank to turn over the CD[67] or its value, the Bank would be entitled to adequate protection to ensure payment of $383,099.  This result under § 542(a) is similar to the result under § 549 discussed above—the Bank would be entitled to receive payment from the estate in an amount equal to the value of the CD.  The fact that the Bank would be entitled to receive exactly what it would be forced to turn over renders turnover pointless and granting judgment to the Trustee under § 542(a) would be meaningless.

## V. **CONCLUSION**

Because the Bank was a fully secured creditor at the time of the $383,099 Transfer, the Bank's lien would be revived if the $383,009 Transfer were avoided under § 549.  As a consequence, there is no value the Trustee may recover for the benefit of the estate under § 550(a).  Even if the Court were to order the Bank to pay $383,099 to the Trustee, because the payment is subject to the Bank's secured claim, it would be a waste of judicial and estate resources to avoid the $383,099 Transfer under § 549 only to return the same amount to the Bank.

Although the § 362(a) automatic stay should be held inviolable and violations of the automatic stay are of great concern to the Court, an award of damages for violation of the automatic stay is circumscribed by the Bankruptcy Code and this Court's civil contempt powers. This Court may not use its civil contempt powers to strip a secured creditor's lien simply

---

[67] The Court notes that the CD is no longer in the Bank's possession but solely for purpose of this analysis will assume the CD is deemed to exist.

26

because the creditor violated the automatic stay or to award a judgment unrelated to any

damages. Given the facts pled in this case, the Trustee has failed to state a claim under § 362(a)

upon which relief may be granted.

Because there was no equity in the CD and there was no benefit for the Trustee to

administer, the CD was of inconsequential value or benefit to the estate and the Bank was not

required to turn over the CD to the Trustee. If this Court were to order the Bank to turn over the

CD or its value to the Trustee would be required to provide the Bank adequate protection in the

amount of the CD. Again, it would be a waste of judicial and estate resources to order the

turnover of the $383,099 Transfer under § 542 only to return the same amount to the Bank.

The Court's conclusions in this case do no violence to §§ 362(a), 542 or 549. If the

facts in this case were different, the result may be different. If the liquidation of the CD and the

$383,099 Transfer enabled the Bank to receive an amount in excess of its secured claim, there

may be an avoidance action under § 549. If the liquidation of the CD and the $383,099 Transfer

were a violation of the automatic stay that caused damage to the bankruptcy estate, then an

award of damages may be appropriate. If the CD had value and benefit for to the estate, turnover

under § 542 may be appropriate. But to "strip" the Bank's $383,099 lien as a result of a

postpetition transfer that caused no injury to the estate is not only inconsistent with the

Bankruptcy Code but punitive and inappropriate and will not be ordered by this Court.

Accordingly, the Bank's motion for summary judgment will be granted.

-----------------------------------------------End of Document-----------------------------------------------

27

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **Memorandum Decision** will be effected through the Bankruptcy Noticing Center to the following parties.

Michael N. Zundel
Aaron Millar
City Centre I, Suite 900
175 East 400 South
Salt Lake City, UT 84111

Steven J. McCardell
Jessica G Peterson
Durham Jones & Pinegar
111 East Broadway, Suite 900
PO Box 4050
Salt Lake City, UT 84110